**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

**MICHAEL T. PARKER**
**PATRICE PARKER**
6714 Berkshire Dr.
Temple Hills, MD  20748-4029

    **Plaintiffs**

**v.**

Civil Case: ___V483903___

**NATIONWIDE SERVICING CENTER INC.**
1425 University Ave. #D
San Diego, CA 92103
<u>SERVE ON:</u>
Israel Hechter, Chief Executive Officer
1425 University Ave. #D
San Diego, CA  92103
    **And**
**OCEAN 18, LLC**
1425 University Ave. #D
San Diego, CA  92103
<u>SERVE ON:</u>
Israel Hechter, President
1425 University Ave. #D
San Diego, CA  92103
    **And**
**FCI LENDER SERVICES, INC.**
8180 E. Kaiser Blvd.
Anaheim, CA  92807
<u>SERVE ON:</u>
Cogency Global,
    Resident Agent
1519 York Road
Lutherville, MD  21093

    **Defendants**

**RECEIVED**

**OCT 3 0 2020**

Clerk of the Circuit Court
Montgomery County, Md.

**COMPLAINT & REQUEST FOR JURY TRIAL**

Plaintiffs Michael and Patrice Parker ("**Parkers**" or "**Plaintiffs**"), on their individual be-
half, by their attorneys, Phillip R. Robinson and the Consumer Law Center LLC, sue Nationwide
Servicing Center Inc. ("Nationwide"), Ocean 18, LLC ("Ocean"), and FCI Lender Services, Inc.
("FCI")(collectively "**Defendants**"), demand a trial by Jury on all counts for which a right to trial
by jury is allowed and, in support of their Complaint, state:

<h2 align="center">INTRODUCTION</h2>

1.      The underlying matter involves a new industry of professionals who are acquiring
interests in defaulted mortgage debts for pennies on the dollar with the aim to collect large profits
on that debt through threats of foreclosure and other means but without the right to do so because
they are willfully violating certain Maryland and Federal laws governing their activities.

2.      The Defendants' direct and indirect conduct is done under the color of law when in
fact they have no right to threaten or even to actually use Maryland courts since they are acting
illegally and no unlicensed professional with unclean hands is entitled to use the Maryland courts
in furtherance of its illegal business.

3.      In this instance, the Defendants' actions have not only harmed the Plaintiffs through
unlawful conduct but also harms other professionals who do not violate the law.  In other words,
the Defendants' conduct seeks an unfair advantage over their competitors who (i) do not misstate
the true facts, (ii) who are licensed professionals, and (iii) do not act unfairly, deceptively, or abu-
sively ignore their legal, statutory and contractual duties.

4.      The subject practices involved in this action include: (i) Nationwide's and Ocean's
improper demand for sums it claims are due to it from the Plaintiffs, directly and indirectly through
FCI and others involved in the mortgage lending process, with the intent that Plaintiffs and others
rely upon its unfair or deceptive demands; (ii) FCI's, Ocean's, and Nationwide's unfair conduct as

2

a debt collectors; and (iii) Nationwide's and Ocean's illegal conduct in violation of the Maryland Mortgage Lender Law ("MMLL"), FIN. INST. § 11-501, *et seq*. The Defendants' collectively engaged in improper threats of debt collection activities, with the intent that Plaintiffs would rely on them and pay them sums in excess of what is lawfully able to be collected. In fact, the Plaintiffs did rely on the threats of collection to their detriment and incurred legally cognizable damages including economic and non-economic damages and losses.

5.     The Parkers' damages and losses proximately caused by Defendants include but are not limited to: (i) false and incorrect reporting to third parties that the Parkers are delinquent or in default on a mortgage loan for sums which are not collectable, (ii) significant emotional damages, with physical manifestations such as anxiety, stress, frustration, anger, and fear. These damages were proximately caused by the Defendants' wrongfully threatened debt collection, improper mortgage servicing, and/or threatened foreclosure on the Plaintiffs' home. The Defendants' unlawful acts prevented the Plaintiffs from quietly enjoying the benefit of homeownership and risk-free sale of their home (which is their right) without having to pay in excess of what the Defendants are lawfully entitled to collect. This action also seeks compensatory, statutory damages, costs and reasonable attorneys' fees for each Plaintiff from the Defendants.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction asserted for the claims herein because FCI, Ocean and Nationwide transact business (directly and indirectly), performs work in, and has interest in real property, and provides services in Maryland and Montgomery County, Maryland. *See e.g. Pacific Mortg. and Inv. Group, Ltd. v. Horn*, 100 Md.App. 311, 324 (Md.App.,1994)(a person who "buys and sells [] mortgage liens has done more than merely transacted business…but has, in fact, carried on a regular business").

3

7.     This Court also has jurisdiction for the claims asserted because the injuries caused by FCI, Ocean and Nationwide to the Plaintiffs occurred in Maryland.

8.     Further, FCI, Ocean and Nationwide own real property (directly and indirectly), or has an interest in real property in the State of Maryland and Montgomery County thereby subjecting themselves to the jurisdiction of this Court.

## PARTIES

9.     Plaintiffs Michael and Patrice Parker ("Parkers" or "Named Plaintiffs") are natural persons who own the real property known as 6714 Berkshire Dr. in Temple Hills, MD 20748-4029 ("Parker Property"). The Parkers are also the borrowers on the mortgage loan subject to this action which is associated with the Parker Property and was utilized entirely for personal, consumer purposes ("Parker Loan"). The Parker Loan is a federally related mortgage.

10.     FCI Lender Services, Inc. ("FCI") is a California corporation with its principal place of business at 8180 E. Kaiser Blvd., Anaheim, CA 92808. It does business in the State of Maryland and Montgomery County and is a licensed Maryland mortgage lender from its Anaheim location. In addition

a.     Defendant FCI is a "special servicer," holding itself out as engaging in "Non-Performing Loan Workouts." (https://www.trustfci.com/SpecialtyLoanServicing.html);

b.     FCI regularly attempts to collect loans owned by others, including Nationwide, which are in default at the time FCI first becomes involved with them.

c.     FCI uses the mails and telephone system in conducting business when communicating with borrowers and consumers like the Plaintiffs.

d.     FCI is a debt collector as defined in the FDCPA and a collector under the MCDCA.

4

       e.     FCI was at all times relevant to the allegations in this complaint, acting as the agent of Nationwide and as the servicer of the mortgage loan at issue in this matter, within the meaning of the Regulation Z of the Truth in Lending Act ("TILA), and subject to its requirements of 12 CFR 1026.40.

       f.     At all times relevant hereto and in all matters alleged herein, FCI acted as agent for and on behalf of Defendant Nationwide. All the actions taken by FCI as alleged in this matter where taken under the supervision and/or direction of Nationwide.

    11.   Nationwide is a California corporation not registered to do business in the State of Maryland and not licensed as a Maryland mortgage lender or otherwise exempted from being so licensed.  In addition

       a.     According to is corporate registration papers in the State of California, Nationwide does not conduct a banking business, trust company business, or any profession permitted by the California Corporations Code.

       b.     Nationwide regularly attempts to collect loans directly and through others including FCI and Ocean, which are in default at the time Nationwide first becomes involved with them.

       c.     Nationwide uses the mail, both paper and electronic, and telephone system in conducting business when communicating with borrowers and consumers like the Plaintiffs.

       d.     Nationwide is a professional debt collector as defined in the FDCPA and a collector under the MCDCA.

       e.     Nationwide is vicariously liable for the acts of FCI and Ocean on its behalf in relation to the Plaintiffs.  Alternatively, Nationwide is an alter ego of Ocean and the two entities

are managed and controlled by the same persons and utilized for unlawful collection purposes in the State of Maryland as described herein.

12.    Ocean is a Delaware LLC not registered to do business in the State of Maryland and not licensed as a Maryland mortgage lender or otherwise exempted from being so licensed.  In addition

a.    Ocean regularly attempts to collect loans directly and through others including FCI and Nationwide, which are in default at the time Ocean first becomes involved with them.

b.    Ocean uses the mails and telephone system in conducting business when communicating with borrowers and consumers like the Plaintiffs.

c.    Ocean is a professional debt collector as defined in the FDCPA and a collector under the MCDCA.

d.    Ocean is vicariously liable for the acts of FCI and Nationwide on its behalf in relation to the Plaintiffs.  Alternatively, Ocean is an alter ego of Nationwide and the two entities are managed and controlled by the same persons and utilized for unlawful collection purposes in the State of Maryland as described herein.

**FACTUAL ALLEGATIONS**

***General Allegations About Defendants' Knowledge***

13.    All persons, including licensed mortgage lender/servicers in the State of Maryland like FCI, are expected to know the law—including the laws governing their activities.  As part of its license to even conduct business in the State of Maryland, FCI "has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20. The Parkers and other Maryland borrowers like the Parkers are third

6

party beneficiaries of MD. CODE REGS. 09.03.06.20. All persons doing business in Maryland, including Nationwide, are also expected to know the law.

14.    The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to the consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005). This duty of care applies to Defendants as their work involves secured, consumer mortgage loans subject to Maryland and Federal laws those discussed herein.

15.    Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), FCI is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), FCI is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." It is unreasonable and a violation of its duties for FCI to impose and collect sums never properly agreed to by the borrower pursuant to Md. Code Regs. 09.03.06.08.

16.    FCI has duties to the Plaintiff to (i) take appropriate steps to avoid foreclosure (and not churn the collection of fees and costs not permitted under the law or actually incurred) and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection (by regulation) to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Amongst these obligations are the servicer's duties to comply with state laws and regulations that are not expressly preempted by RESPA; in other words, Congress and the CFPB expressly intended for RESPA to work in concert with state regulation. *See e.g.* 12 U.S.C.A. § 2605(h) and 12 C.F.R. § 1024.33(d) (expressly limiting preemption to certain notice issues).

7

17.     The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, estab-
lishes a statutory duty upon Defendants to disclose to mortgage borrowers, homeowners, and its
predecessor servicers with respect to the mortgage lending process in an honest and truthful man-
ner. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D.
Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D.
Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL
4402680 (D. Md. Sept. 20, 2011).

18.     Maryland law specifically provides that "a lender may not impose a lender's inspec-
tion fee in connection with a loan secured by residential real property." COM. LAW § 12-121(b).
*See also Taylor v. Friedman*, 344 Md. 572, 584 (1997)("For the foregoing reasons we conclude
that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of
§ 12–121 to closing costs as to override the plain language of the statute")

### Factual Allegations Relevant to the Parkers

19.     The Parkers acquired the Parker Property on or about December 17, 1993.

20.     On or about March 10, 2006 the Parkers took out a second loan on the Parker Prop-
erty in the form of a Home Equity Line of Credit Agreement with GMAC Mortgage Corporation
("GMAC").

21.     The GMAC loan set a limit on the loan about (i.e. $25,000) and purportedly per-
mitted the Parkers to draw up that sum in multiple advances. Consequently, the Secondary Mort-
gage Loan Lender Mortgage Home Equity Line of Credit Agreement ("Note") made between
GMAC and the Parkers is not negotiable because it does not contain a provision requiring payment
of a fixed amount of money. COM. LAW § 3-104(a). *See also* Cmt. 1 to § 3-104 (explaining the
"the amount of money must be 'a fixed amount * * * with or without interest or other charges

8

described in the promise or order'" which means the fixed amount applies to the principal).[1]   As a result, Title 3 of Maryland's UCC does not apply to the Note since Title 3 only applies to negotiable instruments.

22.     From time to time the Parkers drew certain sums related to the Note and repaid those sums to GMAC.

23.     GMAC and its parent company and affiliates sought Chapter 11 bankruptcy protection in 2012.   During those bankruptcy proceedings Ocwen Loan Servicing LLC became the servicer of the Note on or about February 15, 2013.  When Ocwen serviced the Note it was doing so on behalf of the Bank of New York Trust Company, NA, as successor in interest to J.P. Morgan Chase Bank, National Association, as Indenture Trustee for GMACM Home Equity Loan Trust 2006-HE1 ("GMACM 2006-HE1").  This representation is based on the specific statement of Ocwen to the Office of the Commissioner of Financial Regulation dated April 9, 2019.

24.     When Ocwen became the servicer on the Note it informed the Parkers that the Note was being written off and no more payments needed to be made on the loan.  In reliance to Ocwen's representation to them and Ocwen's failure to send them any other periodic statements related to the loan the Parkers reasonably believed the loan was written off.  A reasonable person in a similar instance would believe the same.

---

[1]     As a nonnegotiable instrument the purported Note is not proof of authentication and is simply inadmissible evidence. *Third Fed. Sav. & Loan Ass'n of Cleveland v. Koulouvaris*, 247 So. 3d 652, 655 (Fla. Dist. Ct. App. 2018)(finding that a HELOC loan was a nonnegotiable instrument under Florida's version of the UCC (which is the same as Maryland's) and therefore the note was "not a self-authenticating negotiable instrument").

25.     On December 14, 2017, Ocean 18 LLC caused an Appointment of Substitute Trustees to be recorded in the land records of Prince George's County claiming it had the right to make such an appointment. The appointment was signed by Terry Dailey.

26.     On January 18, 2018 Ocean 18 LLC authorized the commencement of a foreclosure action against the Parkers and the Parker Property that it did not have the legal right to commence as discussed herein (Case No. CAEF 18-00887) for the purported purpose of collecting upon the Note. In that unauthorized foreclosure action:

a.     Ocean 18, LLC by Terry Daily falsely, unfairly, and deceptively claimed the Parkers owed interest on the Loan from May 19, 2010 to December 19, 2017 when in fact that sum of interest was not lawfully due since the debt had been written off by Ocean 18's predecessor(s) and no statements had been sent to the Parkers, and the foreclosure action sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B).

b.     Ocean 18, LLC by Terry Daily falsely, unfairly, and deceptively claimed the Parkers owed Late charges of $407.50 when in fact that sum of late charges were not lawfully due.

c.     Ocean 18, LLC by Terry Daily claimed in sworn testimony to be the owner of the Note.

d.     Ocean 18, LLC by Terry Daily claimed in sworn testimony that it was unable to get into communication with the Parkers.

e.     Ocean 18, LLC by Terry Daily claimed that servicer of the Note was Mortgage Default Services, LLC and Ocean 18, LLC was the secured party as of November 29, 2017 and the total amount to cure the alleged default was as of November 29, 2017 was equal to 8,321.18.

10

f.      Ocean 18, LLC sought sums that were barred from collection by 12 C.F.R.
§ 1026.41(e)(6)(ii)(B) and also by the fact that Ocean 18 was acting illegally as an unlicensed
mortgage lender/servicer and was not permitted to seek interest and fees from the Parkers as a
result.

27.     On April 9, 2018, Nationwide represented that it was no longer going to serve as
the servicer of the Note and FCI would become the servicer effective April 24, 2018.

28.     On May 2, 2018, Nationwide represented to the Parkers that it had the right to col-
lect on the Note but it concealed from the Parkers that it had no such right since it was acting as
an unlicensed mortgage lender and it had not even been assigned to it for any purpose.  In this
written communication Nationwide sought to induce the Parkers to agree they owed sums no one
had the right to collect under the Note as discussed *infra*.

29.     On May 3, 2018, Nationwide represented that it would once again serve as the ser-
vicer of the Note and FCI would stop acting as the servicer of the Note effective May 18, 2018.

30.     On May 14, 2018 FCI provided to the Parkers a Loan Reinstatement Quote con-
cerning the Note that claimed they owed sums it was not entitled to collect (i.e. interest and fees
the owner does not have a right to collect).    This quote also sought to collect sums barred from
collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers
had not been sent statements for years and FCI was seeking sums its predecessor(s) had abandoned
and were otherwise time barred.

31.     On May 18, 2018 FCI represented to the Parkers that the servicing of the Note
transferred to Ocean 18, LLC.

32.     On May 22, 2018 Nationwide provided to the Parkers a Loan Reinstatement Quote
concerning the Note that claimed the Parkers owed sums neither Nationwide nor Ocean 18, LLC

were entitled to collect.   This statement was also materially inconsistent with the similar statement provided by FCI to the Parkers on May 14, 2018. This quote also sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers had not been sent statements for years, and Nationwide was seeking sums its predecessor(s) had abandoned and were otherwise time barred.

33.     On June 4, 2018 ownership of the Note was purportedly assigned by Ocean 18, LLC to Nationwide.  This assignment was authorized by Terry Dailey.

34.     On April 11, 2019, Nationwide represented that is was no longer going to serve as the servicer of the Note and FCI would again become the servicer effective April 26, 2019.

35.     On July 18, 2019, FCI represented to the Parkers in a Loan Reinstatement Calculation that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not have a right to collect).  This quote also sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers had not been sent statements for years and FCI was seeking sums its predecessor(s) had abandoned and were otherwise time barred.

36.     On October 24, 2019, FCI represented to the Parkers in a Borrower Statement of Account that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not have a right to collect).   This statement also sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers had not been sent statements for years and FCI was seeking sums its predecessor(s) had abandoned and were otherwise time barred.

37.     On October 25, 2019, FCI represented to the Parkers in a monthly, periodic statement that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not

have a right to collect). This statement also sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers had not been sent statements for years and FCI was seeking sums its predecessor(s) had abandoned and were otherwise time barred.

38.     On February 21, 2020, FCI represented to the Parkers in a Subsequent Interest Rate Adjustment that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not have a right to collect).

39.     On March 23, 2020, FCI represented to the Parkers in a monthly, periodic statement that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not have a right to collect). This statement also sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers had not been sent statements for years and FCI was seeking sums its predecessor(s) had abandoned and were otherwise time barred.

40.     On April 21, 2020, FCI represented to the Parkers in a monthly, periodic statement that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not have a right to collect). This statement also sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers had not been sent statements for years and FCI was seeking sums its predecessor(s) had abandoned and were otherwise time barred.

41.     On April 27, 2020, FCI represented to the Parkers in a Subsequent Interest Rate Adjustment that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not have a right to collect). This statement was also materially inconsistent and deceptive in relation to the prior, similar statement sent by FCI to the Parkers on February 21, 2020.

42.     On May 21, 2020, FCI represented to the Parkers in a monthly, periodic statement that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not have a right to collect).  This statement also sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers had not been sent statements for years and FCI was seeking sums its predecessor(s) had abandoned and were otherwise time barred.

43.     On June 22, 2020, FCI represented to the Parkers in a monthly, periodic statement that they owed sums on the Note that are not owed (i.e. interest and fees the owner does not have a right to collect).  This statement also sought to collect sums barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B) since the debt had been charged off and the Parkers had not been sent statements for years and FCI was seeking sums its predecessor(s) had abandoned and were otherwise time barred.

44.     In reliance to the unfair and deceptive statements made by the Defendants, the Parkers paid sums to them which were not lawfully due and owing on the Note (including on March 20, 2018, April 20, 2018, May 20, 2018, and other dates).  The total of these unlawful sums collected by the Defendants from the Parkers, made in reliance to the Defendants' unfair and deceptive demands, exceeded $10,000.00.

45.     In reliance to the unfair and deceptive collection practices of the Defendants, directly and indirectly through their agents, the Parkers feared their home and property would be taken from them by the foreclosure action filed against them.  These damages were manifested by frustration, anger, sleep issues, anxiety, etc.

46.     The Parkers could not reasonably believe that so-called professionals, including the Defendants and their agents, would use the courts to threaten to take their home based on a debt

14

that had been written off years before, and about which there had been no contact from anyone

concerning the debt since it was written off.   It is unfair for the Defendants to claim a right to fees

and costs due from the Parkers that had been abandoned by the Defendants' predecessors long ago.

**COUNT I: Violations of MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA"),
Com. Law § 14-201, *et seq.*, & MARYLAND'S CONSUMER PROTECTION ACT ("MCPA"), COM.
LAW §§ 13-101 *et seq.*
(Against all Defendants)**

47.      The Parkers adopt by reference the factual allegations contained in the preceding

paragraphs of this Complaint with the same effect as if herein fully set forth.

48.      At all times described herein the Defendants have acted as collectors by utilizing

unlawful methods of collection and/or seeking sums from the Parkers that were not lawfully due

arising out of a consumer transaction—their mortgage loan used for personal, consumer purposes

related to the Property.  COM. LAW §14-201(b).

49.      The Defendants are aware of the Federal and State laws governing their activities

described herein but recklessly disregarded those laws and duties without any consideration of the

negative consequences to Plaintiffs, and therefore ratified each other's improper conduct for their

own benefit.  The Defendants have also attempted to collect from Plaintiffs in manners which also

violate the terms of documents governing the Note and its security instrument. The unlawful meth-

ods of collection utilized by the Defendants include:

a.      **Unlicensed Conduct, directly and indirectly by Ocean 18 & Nation-
wide:**

49.a.1. FCI is not permitted by its license under the Maryland Mortgage

Lender Law ("MMLL") to loan its license to another who is required to be separately licensed but

is not.  Notwithstanding this, FCI has acted as though it may do so by seeking from the Parkers

sums neither Ocean 18 nor Nationwide have a right to collect.

49.a.2. In relation to the Parkers, Ocean 18 has acted as a mortgage lender and/or mortgage servicer but is not properly licensed to perform either function and is not exempt from being so licensed.

49.a.3. In relation to the Parkers, Nationwide has acted as a mortgage lender and/or mortgage servicer but is not properly licensed to perform either function and is not exempt from being so licensed.

49.a.4. As unlicensed lenders acting in contravention of the MMLL, Nationwide and Ocean 18 are not permitted to claims any right for interest, fees, or other sums in excess of the principal amounts claimed due and have acted illegally. *See e.g.* FIN. INST. § 11-523(b).

49.a.5. As unlicensed lenders acting in contravention of the MMLL, Nationwide and Ocean 18 were not permitted to commence foreclosure proceedings against the Parkers since they were acting illegally by doing so. *See e.g.* FIN. INST. § 11-523(b). Maryland law does not permit persons like Nationwide and Ocean 18 the right to use Maryland courts for their unlicensed activities.

      b.    **Demanding and Seeking Sums long ago abandoned by their predecessors, retroactively, and barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B):**

49.b.1. The Defendants (and their predecessors in interest and certain of their agents) have duties to send accurate periodic statements to the Plaintiffs identifying certain

16

information as required by 15 U.S.C.A. § 1638(f) and 12 C.F.R. § 1026.41.[2]

*See also* COM. LAW § 12-106.

49.b.2.  Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), the Defendants are required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law."  Pursuant to 12 C.F.R. § 1024.35(b)(5), the Defendants are not permitted to "impos[e]... a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  It is unreasonable and a violation of its duties for Defendants to demand inaccurate sums due from the Parkers they had no right to collect or attempt to collect any sums from the Plaintiffs which were barred by Federal and State laws governing the Plaintiffs' Note.

49.b.3. The Defendants (and their predecessors in interest and certain of their agents) are also prohibited when servicing and collecting upon a loan that has been charged off by their predecessor from attempting to collect or acting collecting, directly or indirectly, retroactive fees from a borrower.   12 C.F.R. § 1026.41(e)(6)(ii)(B).  Yet, notwithstanding that the Note had been charged off by their predecessor in interest long ago, the Defendants have claimed greater rights in the Note than they have the right to collect and were barred from collection by 12 C.F.R. § 1026.41(e)(6)(ii)(B).

      c.        **Seeking to Collect by Foreclosure without the right to do so by claiming possession of an endorsed in blank HELOC note is negotiable paper when it is not:**

---

[2]      The CFPB official interpretation of 12 CFR § 1026.41(a) states that:

"The periodic statement requirement in § 1026.41 applies to the 'creditor, assignee, or servicer as applicable.' The creditor, assignee, and servicer are all subject to this requirement ....., but only one statement must be sent to the consumer each billing cycle. When two or more parties are subject to this requirement, they may decide among themselves which of them will send the statement."

49.c.1. In the foreclosure action, Nationwide and Ocean 18 claimed the right of foreclosure based upon their claimed standing as a holder of the Note which they represented was negotiable paper under Maryland's commercial law.

49.c.2. The Note does not qualify as a negotiable instrument and neither Nationwide nor Ocean 18 had the right to claim or suggest in the foreclosure action that it was negotiable paper. Rather, Nationwide and Ocean 18 were required to show the Note had been properly assigned to them and to show the entire chain of title from GMAC but as part of their collection practices they concealed this information from the Parkers to claim greater rights in the Note than they actually had.

50.     Maryland's debt collection and mortgage lending laws and the Defendants' duties under Maryland law do not permit them to utilize methods and means of collection not permitted by law or the documents governing the parties' relationship. The Defendants know the law and know that their records related to the Note are not accurate. However, each knowingly and recklessly attempted to interfere or otherwise infect Plaintiffs' rights on the basis of alleged sums not lawfully due, failing to properly respond to inquiries and performing reasonable investigations, and making false and misleading demands, directly and indirectly, to Plaintiffs and others in their knowing and reckless efforts to collect sums not lawfully due from Plaintiffs. By such acts Defendants have:

a.  Knowingly and recklessly claimed, attempted, or threatened to enforce rights with knowledge that the rights do not exist, in violation of the MCDCA. COM LAW §14-202(8).

b.  Engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f.

COM LAW §14- 202(11).

52.     Plaintiffs are therefore entitled to their damages and losses described *supra* which have proximately resulted from Defendants' direct and indirect actions in violation of the MCDCA. COM. LAW, § 14-203.

53.     The Defendants' violations of the MCDCA are also *per se* violations of the MCPA.  COM. LAW § 13-301(14)(iii).

54.     The mortgage loan servicing and collection practices described herein of each of the Defendants, as set forth herein, are governed by the Maryland Consumer Protection Act ("MCPA"), COM. LAW. § 13-101, *et seq*.

55.     COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and attempted collection of the Note, and the threatened foreclosure/collection and other acts and omissions related to the Defendants' debt collection practices involves both the extension of credit and the collection of debts.

56.     COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by Defendants.

57.     The MCPA defines unfair or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.  COM. LAW §§13-301(1) and (3).

58.     The Defendants' acts and omissions described herein, and including but not limited to (i) seeking and demanding sums not legally or contractually due from Plaintiffs,  (ii) initiating collection activity by sending false and misleading notices and asserting other false and misleading

19

communications to Plaintiffs when the Defendants knew that no right to collect existed, and (iii) failing to conduct any reasonable investigation of Plaintiffs' disputes whatsoever constitute unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5).

59.     Plaintiffs reasonably relied upon the material acts and actions of the Defendants as exemplified *supra*.  In addition, Plaintiffs' reliance is demonstrated (i) by their communications with the Defendants, government agencies, and their Defendants' agents in response to the claims for sums due to them, (ii) their notification and dispute of the right to collect in reliance to and in response to its continued false and deceptive threats of collection, and (iii) incurred costs, legal fees, and expenses to investigate the Defendants' activities.  The Defendants' acts and omissions are simply unreasonable, unfair, abusive, and deceptive—even those acts after this action commenced which demonstrate it simply wishes to avoid any review of their improper collection and other activities and practices.

60.     Had Defendants not acted unfairly and deceptively, Plaintiffs would not have suffered the damages and losses they have described *supra.*

61.     Plaintiffs have pled sufficient facts to put Defendants on notice as to the claims against each as exemplified *supra* (i.e. dates of key acts and representations of the Defendants, the identities of their agents and representatives; and the regulatory and statutory duties of the Defendants which each simply ignored and thereby infected the subject transactions to ensure harm and damage to Plaintiffs).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests the Court enter a money judgment pursuant to Count I under the MCDCA and MCPA, in their favor and against Defendants FCI, Ocean, and

Nationwide, jointly and severally, in a sum equal to $40,000 for each Plaintiff for all actual and statutory damages, attorney fees, and costs.

Respectfully submitted,

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Phone (301) 448-1304
phillip@marylandconsumer.com

*Attorneys for the Plaintiffs and Putative Class Members*

## RULED 20-201 CERTIFICATION

I hereby certify that this filing does not contain any restricted information.

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
301-448-1304
phillip@marylandconsumer.com
*Attorneys for the Plaintiff and Putative Class Members*

21

## JURY DEMAND

Plaintiffs, on their behalf and on behalf of the putative class and subclass members, by their undersigned counsel request a jury trial in this matter.

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304